IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

| | |
|---|---|
| **STETSON SKENDER, Individually and on Behalf of All Others Similarly Situated** | **PLAINTIFF** |
| VS. | 4:20-CV-00054-BRW |
| **EDEN ISLE CORPORATION** and **GARY REDD** | **DEFENDANTS** |

## ORDER

Pending is Defendants' Motion for Summary Judgment (Doc. No. 14). Plaintiff has responded and Defendants have replied.[1] For the reasons stated below, the motion is GRANTED.

**I.   BACKGROUND**[2]

Defendant Eden Isle Corporation ("EIC") is a property owners' association in the Eden Isle Subdivision located in Heber Springs, Arkansas. Defendant Gary Redd was elected to five-year term as president of EIC in 2017. On June 19, 2017, EIC hired Plaintiff as a maintenance crew member. His first term of employment with EIC ended on June 27, 2018. EIC rehired Plaintiff to the same position on August 27, 2018. Plaintiff became the acting maintenance supervisor in June 2019 and was officially promoted to the position in September 2019. EIC terminated his employment on December 31, 2019.

During his time with EIC, Plaintiff's scheduled work hours were Monday through Friday from 7:00 a.m. to 3:30 p.m. Plaintiff also worked on the weekends, but did not have a set weekend schedule. EIC provided a time clock and time card to record employees' work hours. When Plaintiff worked as maintenance crew member he did not personally clock himself in and

---

[1]Doc. Nos. 19, 21.

[2]Unless otherwise noted, the Background is from the concise statements of undisputed material facts (Doc. Nos. 16, 20).

out.  However, Plaintiff used his own time card to clock himself in and out when he worked on the weekend.  After Plaintiff became acting maintenance supervisor, he personally clocked in and out of every work shift.

On January 14, 2020, Plaintiff filed his Complaint alleging Defendants violated the Fair Labor Standards Act ("FLSA")[3] and the Arkansas Minimum Wage Act ("AMWA").[4]  Plaintiff asserts that Defendants failed to pay him overtime for work performed during off-the-clock hours.[5]  He seeks a declaratory judgment, monetary damages, liquidated damages, prejudgment interest, and a reasonable attorney's fee and costs as a result of Defendants' alleged failure to pay proper overtime compensation.[6]

In the pending motion for summary judgment,  Defendants contend Plaintiff's "bare, conclusory, and inconsistent statements" fail to support of his claim.  Defendants argue that Plaintiff cannot establish that he performed work that he was not paid for or show the amount and extent of that work as a matter of just and reasonable inference.  I agree.

## II.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[7]  However, if the nonmoving party can present specific facts by "affidavit, deposition, or otherwise, showing the existence of a genuine issue for trial," then summary judgment is not appropriate.[8]  It is important to understand that "[t]he

---

[3] 29 U.S.C. § 201 *et seq*.

[4] Ark. Code Ann. § 11–4–201 *et seq*.

[5] Doc. No 1, p. 1.

[6] *Id.*

[7] Fed. R. Civ. P. 56(a).

[8] *Grey v. City of Oak Grove, Mo.*, 396 F.3d 1031, 1034 (8th Cir. 2005).

mere existence of a factual dispute is insufficient alone to bar summary judgment."[9] To prevent summary judgment, the dispute of fact must be both genuine and material.[10] A genuine dispute of fact exists where a rational jury could decide the particular question of fact for either party.[11] A material dispute of fact exists where the jury's decision on the particular question of fact determines the outcome of a potentially dispositive issue under the substantive law.[12]

The moving party has the burden of showing that (1) there is an absence of a genuine dispute of material fact on at least one essential element of the nonmoving party's case and (2) the absence means that a rational juror could not possibly find for the nonmoving party on that essential element of the nonmoving party's case.[13] If the moving party meets that burden, the burden then shifts to the nonmoving party to show that there is a genuine dispute of material fact.[14] The nonmoving party meets this burden by designating specific facts in affidavits, depositions, answers to interrogatories, admissions, or other record evidence that shows "there is a genuine issue for trial."[15] I must view the evidence in the light most favorable to the nonmoving party and give the nonmoving party the benefit of all reasonable inferences.[16]

---

[9] *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989) (citation omitted).

[10] *Id.*

[11] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[12] *Id.*

[13] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

[14] *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011).

[15] *Celotex Corp.*, 477 U.S. at 322-24.

[16] *Pedersen v. Bio-Med. Applications of Minn.*, 775 F.3d 1049, 1053 (8th Cir. 2015).

### III.  DISCUSSION

The FLSA requires employers to pay non-exempt employees at a rate not less than one and one-half times an employee's regular rate for all hours worked more than 40 hours in a week.[17]  The parties do not dispute that Plaintiff is non-exempt.  If an employee is non-exempt, the employee must be compensated for duties "before and after scheduled hours . . . if the employer knows or has reason to believe the employee is continuing to work and the duties are an integral and indispensable part of the employee's principal work activity."[18]  In other words, an employer must pay a non-exempt employee for hours worked that the employer has actual or constructive knowledge of.

The constructive-knowledge rule requires an employer to use reasonable diligence to determine whether its employees are working more than their scheduled hours.[19]  The FLSA requires employers to keep records of the number of hours worked each day and a total of the number of hours worked each week by each employee.[20]  However, access to records indicating that an employee was working overtime is not necessarily sufficient to establish that the employer had constructive knowledge.[21]  "The FLSA's standard for constructive knowledge in the overtime context is whether the [employer] should have known, not whether it could have known."[22]

If an employer establishes a reasonable process for an employee to report uncompensated work time, the employer is not liable for non-payment if the employee fails to follow the

---

[17] 29 U.S.C. § 207(a)(1).

[18] *Hertz v. Woodbury Cnty, Iowa*, 566 F.3d 775, 781 (8th Cir. 2009).

[19] *Shaunpen Zhou v. Intern. Bus. Machines Corp.*, Case No. 15-cv-1027-LRR, 2017 WL 1217195, 17 (N.D. Iowa Mar. 31, 2017) (citing *Hertz*, 566 F.3d at 781).

[20] 29 U.S.C. § 211(c).

[21] *Hertz*, 566 F.3d at 781-82.

[22] *Id.* at 782.

established process.[23]   However, courts have found that an employer's formal policy for reporting overtime will not protect the employer if the employer prevents or discourages accurate reporting of overtime in practice.[24]

Under the FLSA, the burden is on Plaintiff to prove he performed work for which he was not paid.[25]  If Defendants' time records are inaccurate or inadequate, Plaintiff must produce "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."[26]

Plaintiff can satisfy this burden in different ways, including records and testimony.[27] However, relying "mainly just [on] recollections of [his] daily activities" does not suffice—at least where those recollections are general and vague.[28]  Plaintiff must provide a meaningful and consistent explanation for his estimate of hours worked that includes "details which would allow a jury to determine" that he worked the claimed overtime.[29]

Here, Plaintiff asserts his off-the-clock work included: (1) responding to sewage system emergencies and dealing with after-hours maintenance to keep the system running, (2) answering phone calls from Redd, and (3) responding to the needs of the homeowners.[30]

---

[23]*Cage v. Multiband, Inc.*, Case No. 1:12-cv-87 SNLJ, 2015 WL 687120, at 10 (E.D. Mo. Feb. 18, 2015); *Hussein v. Capital Bldg. Servs. Grp., Inc.*, 152 F. Supp. 3d 1182, 1192 (D. Minn. 2015).

[24]*Allen v. City of Chi.*, 865 F.3d 936, 939 (7th Cir. 2017).

[25]*Anderson v. Mt. Clemens Pottery Company*, 328 U.S. 680, 687 (1946).

[26]*Id.* at 687.

[27]See *Mumbower v. Callicott*, 526 F.2d 1183, 1186 (8th Cir. 1975).

[28]*Holaway v. Stratasys, Inc.*, 771 F.3d 1057, 1058 (8th Cir. 2014).

[29]*Id.* at 1060. If the employee can meet her burden, then the burden shifts to the employer to put forth evidence of the precise amount of work by the employee that negates the "reasonableness of the inference to be drawn from the employee's evidence." *Anderson*, 328 U.S. at 687-88.

[30]Doc. No. 20, p. 9.

Plaintiff relies solely on his own testimony.  He concedes that when he reported overtime hours, he was paid for those overtime hours.[31]  Plaintiff claims that he did not record any off-the-clock work hours because his supervisors told him that he was not allowed to submit over 46 hours per week on his timecard.[32]

The weekly overtime hours Plaintiff claims are vague, inconsistent, and are not corroborated.  Defendants provided a report of Plaintiff's weekly work hours.[33]  He contends that he worked 7 to 35 hours overtime (over 40 hours) every week.[34]  However, his recorded time is not close to those  amounts (47 to 75 hours).  According to Defendants' records, Plaintiff's recorded time was less than 40 work hours in over half of the weeks (41 of 71 total weeks) he was employed with EIC.[35]  It seems to me, that even if Defendants did dissuade claiming over 46 hours per week, Plaintiff would have at least claimed the maximum allowed if he worked the hours he now claims.  The records show a wide gap between Plaintiff's recorded work hours and the alleged 46-hour cap, not to mention the additional hours Plaintiff claims he worked.

Furthermore, the records contradict Plaintiff's claim that he was dissuaded from claiming more than 46 hours a week.  For the week of July 10, 2019, Plaintiff submitted and was paid for 49.25 hours.[36]  He did not allege, or provide any evidence that Defendants punished him for working these hours.  In fact, Plaintiff was promoted to maintenance supervisor a few weeks after he worked this overtime.[37]

---

[31]Doc. No. 20, p 16.

[32]Doc. No. 20, p. 3.

[33]Doc. No. 21-1.

[34]Doc. No. 20, p. 8-9.

[35]Doc. No. 21-1.

[36]*Id.*

[37]Doc. No. 20, p. 7.

Plaintiff also provided a detailed general description of his work on lift stations and seal leaks in the sewer system,[38] but he provided no specific dates or amount of time he worked on this equipment.  In fact, Plaintiff conceded the example he provided during his deposition occurred during normal working hours.[39]  Plaintiff asserted that he encountered "so many [seal leaks] that I can't count."[40]  If these seal leaks required extra work to that extent, it is reasonable to conclude that Plaintiff would be able to provide at least one specific occasion within an identifiable time frame to allow comparison with Defendants' records.  He did not.  Even if Plaintiff's assertions regarding the nature of his work duties are taken as true, nothing in his testimony indicates that this work put his total hours for any given week above the amount recorded on his time card, much less the 47 to 75 hours he claims.

Plaintiff received a "duty phone" as a maintenance crew member and a "supervisor phone" when he became the maintenance supervisor.[41]  Plaintiff contends that EIC's policy requiring him to answer the phone led to unpaid overtime.  His phone duties included "clients calling, questions, me having to answer, dealing with Mr. Redd, every single day phone calls, messages and so on."[42]  However, his testimony shows that answering the phone amounted to a minimal requirement.  Plaintiff testified that he "had a life with the phone" and "lived a normal life just like anyone else that would be at their home."[43]  Plaintiff further testified that he did not consider answering the phone during off-the-clock hours a "restriction."[44]

---

[38]Id. at

[39]Doc. No. 14-1, p. 33.

[40]Id. at 32.

[41]Doc. No. 20, p. 9.

[42]Doc. No. 14-2, pp. 28-29.

[43]Id. at 12.

[44]Id.

Additionally, Plaintiff provided no evidence to support his claim that he is owed overtime wages for time spent using either phone. Plaintiff testified that Defendants' cell phone records would support his claim.[45] Defendants provided the records during discovery.[46] Still, Plaintiff failed to point to any portion of the cell phone records.

Plaintiff contends that during the last two months of his employment, he started arriving at EIC's maintenance facility at 6:30 a.m., working for 30 minutes, and then clocking in at 7:00 a.m.[47] He provided no evidence to support this allegation. Additionally, during this time, he was the maintenance supervisor, so he was responsible for recording and submitting his own time. When Plaintiff failed to follow the time reporting procedures, he prevented the Defendants from knowing its obligation to compensate him and removed any liability under the FLSA.

It is undisputed that Plaintiff did not submit the off-the-clock overtime hours to Defendants. Plaintiff did not make any written requests regarding any of his alleged off-the-clock work that he claims, even though Defendants clearly had a system to address these matters.[48] In fact, Defendants did so for Plaintiff on at least a few occasions.[49]

Plaintiff has failed to provide evidence from which a reasonable jury could rationally conclude that he worked over forty hours a week and reasonably determine the amount and the extent of his overtime work as a matter of just and reasonable inference.[50] While it is true that, as a general matter, a plaintiff's testimony alone can supply the necessary evidence to survive summary judgment, here, Plaintiff's testimony is too vague, too general, and too contradictory.[51]

---

[45] *Id.* at 42.

[46] Doc. No. 21, p. 3.

[47] Doc. No. 14-2, p. 53.

[48] Doc. No. 20, p. 15.

[49] *Id.*

[50] *Holaway*, 771 F.3d at 1060.

[51] *Id.* at 1059-60.

The AMWA and FLSA provide the same overtime requirements, and are interpreted similarly.[52] Therefore, Plaintiff's AMWA claim fails for the same reasons as his FLSA claims. Accordingly, I find that no genuine issues of material fact exist.

## CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment (Doc. No. 14) is hereby, GRANTED.

IT IS SO ORDERED this 29th day of April, 2021.

                                                BILLY ROY WILSON
                                                UNITED STATES DISTRICT JUDGE

---

[52]See *Helmert v. Butterball, LLC*, 805 F. Supp. 2d 655, 663 n.8 (E.D. Ark. 2011).