**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**STETSON SKENDER, Individually and on**                      **PLAINTIFF**
**Behalf of All Others Similarly Situated**

**VS.**                         **NO. 4:20-cv-00054-BRW**

**EDEN ISLE CORPORATION and GARY REDD**            **DEFENDANTS**

## ORDER

Pending is Plaintiff's Motion For Costs and Attorneys' Fees. Defendants have responded and Plaintiff has replied.[1] For the reasons set out below, the motion is GRANTED IN PART and DENIED IN PART. Plaintiff's lawyers ("SLF"[2]) are entitled to $1 in lawyers' fees and $416 in costs from Defendants.

**I.**      **BACKGROUND**

Plaintiff filed this FLSA collective action on January 14, 2020, but never requested conditional certification. There was discovery and a motion for summary judgment, which was granted on April 29, 2021.[3] However, after that ruling, Plaintiff accepted an outstanding offer of judgment of $4,000.[4] The summary judgment order was vacated. With the parties unable to agree on lawyers' fees, Plaintiff filed a motion seeking $30,681.70 in fees and $1,225.20 in costs.

---

[1]Doc. Nos. 49, 50.

[2]Sanford Law Firm.

[3]Doc. No. 24.

[4]Doc. No. 33.

## II.    DISCUSSION

The Fair Labor Standards Act allows for reasonable lawyers' fees upon successful litigation of the claim.[5]  Congress included the fee-shifting language so citizens would have access to the courts to enforce their federal rights.[6]  While that concept is good in theory, it has become apparent that, in practice, lawyers' fees are the driving force in many FLSA cases.[7]

The lodestar method is the "most useful starting point for determining the amount of a reasonable fee."[8]  It requires the court to consider "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."[9]  Then, the court should "adjust the fee upward or downward on the basis of the results obtained."[10]  "[T]he lodestar method produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or

---

[5]29 U.S.C.A. § 216 ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.").

[6]*Morales v. Farmland Foods, Inc.*, No. 8:08CV504, 2013 WL 1704722, *5 (D. Neb. April 18, 2013) (The "purpose of the FLSA attorney's fee provision is to insure effective access to the judicial process," and "encourage the vindication of congressionally identified policies and rights.").

[7]See *Jones v. RK Enterprises of Blytheville, Inc.*, No. 3:13-CV-00252-BRW, 2016 WL 1091094, at *6 (E.D. Ark. Mar. 21, 2016), aff'd, 672 F. App'x 613 (8th Cir. 2016) ("The fact that a case involves fee shifting does not open the door to unwarranted billing that would otherwise never be incurred. Additionally, a lawyer is still required to do a cost-benefit analysis when considering whether to proceed to trial or settle a case, just as lawyer in a non-fee-shifting case would."); *Goss v. Killian Oaks House of Learning*, 248 F. Supp. 2d 1162, 1168 (S.D. Fla. 2003) (holding that "an entitlement to attorney's fees cannot be a *carte blanche* license for Plaintiffs to outrageously and in bad faith run up attorney fees without any threat of sanction" after finding that the plaintiff "leveraged a small sum as a stepping-stone to a disproportionately large award of attorney's fees").

[8]*Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

[9]*Id.*

[10]*Wheeler v. Missouri Highway & Transp. Comm'n*, 348 F.3d 744, 754 (8th Cir. 2003).

she had been representing a paying client who was billed by the hour in a comparable case."[11] "A reasonable fee is one that is adequate to attract competent counsel, but . . . [does] not produce windfalls to attorneys."[12]

"An attorney[s'] fees award under a fee-shifting statute should be comparable to what is traditionally paid to attorneys who are compensated by a fee-paying client."[13] Hours that were not "reasonably expended" must be excluded.[14] "Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission."[15]

## A.     Requested Hourly Rates

SLF requests the following hourly rates in this case: $383 an hour (Josh Sanford); $300 an hour (Anna Stiritz, Vanessa Kinney); $285 (Lydia Hamlet, Steve Rauls); $250 an hour (Sean Short); $240 (Stacy Gibson); $230 an hour (Rebecca Matlock, April Rheaume); $210 an hour (Courtney Lowery); $75 an hour (law clerk); $100 (paralegal); and $60 an hour (staff).[16]

According to Mr. Sanford's affidavit, the rates are consistent with lawyers in the area who work on similar cases. I disagree. In fact, just recently I noted that "there appear to be just

---

[11]*Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551(2010) (emphasis in original).

[12]*Hendrickson v. Branstad*, 934 F.2d 158, 162 (8th Cir. 1991) (internal quotations omitted).

[13]*Morales,* 2013 WL 1704722, at *7 (citing *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 287 (1989)).

[14]*Hensley*, 461 U.S. at 434.

[15]*Id.*

[16]Doc. No. 45.

as many cases rejecting Mr. Sanford's $325 an hour rate as there are approving it."[17]  In fact, just a few months ago, Judge Baker held that $325 an hour was too high.[18]  Undeterred, Mr. Sanford has increased his rate to $383 an hour, an increase of over 15% than the previous $325-rate that has repeatedly been deemed too high. Additionally, the rates appear to be entirely arbitrary and unreliable.  For example other cases litigated by this firm during the same time period, the rates were lower:

| Attorney | Hourly Rate Claimed Here | Hourly Rate Contemporaneous Cases |
|---|---|---|
| Josh Sanford | $383 | $325 |
| Anna Stiritz | $300 | $250 and $275[19] |
| Vaness Kinney | $300 | $250 |
| Lydia Hamlet | $285 | $175 and $225[20] |
| Steve Rauls | $285 | $225[21] |
| Sean Short | $250 | $150 and $175[22] |
| Stacy Gibson | $240 | $190 and $200[23] |

---

[17]*Burton v. Nilkanth Pizza Inc., et al*, No. 4:19-CV-00307-BRW, Doc. No. 48 (E.D. Ark. Aug. 24, 2020) (citing cases).

[18]*Smith v. OM Purshantam, LLC, et al.*, No. 4:18-CV-00797-KGB, 2021 WL 1239468, at *3 (E.D. Ark. March 31, 2021) ("Second, defendants claim that Ms. Smith has proposed hourly rates that are excessive and unjustified. The Court agrees. Mr. Sanford's request for $325.00 per hour has repeatedly been rejected by judges in both the Eastern and Western Districts of Arkansas.").

[19]*Vines, et al v. Welspun Pipes Inc, et al*, No. 4:18-cv-00509-BRW; *Whitehead v. Conway Cycle Shop LLC, et al*, No. 4:20-cv-00234-BRW.

[20]*Beasley v. Macuils Tire And Service Center LLC*, No. 4:19-CV-00471-JM; *Whitehead*, No. 4:20-cv-00234-BRW.

[21]*Beasley*, No. 4:19-CV-00471-JM; *Whitehead*, No. 4:20-cv-00234-BRW.

[22]*Vines*, No. 4:18-cv-00509-BRW.

[23]*Whitehead*, No. 4:20-cv-00234-BRW.

| | | |
|---|---|---|
| April Rheaume | $230 | $150 and $190[24] |
| Stacy Gibson | $240 | $190 and $200[25] |
| Courtney Lowery | $210 | $100 and $150[26] |

I'm not the only judge who has noticed this issue. In August 2020, Judge Brooks, of the Western District of Arkansas, held that "[j]ust a few months ago, however, the Sanford Law Firm submitted invoices requesting $125 an hour for work done by Ms. Matlock. No explanation is given for why Ms. Matlock's rate should have increased 50 percent since June."[27]

SLF provided no evidence of what they have ever charged an actual fee-paying client.[28] They rely on previously awarded hourly rates awarded by courts, but "[p]rior awards are not direct evidence of market behavior; the court is not a legal souk."[29] That's because most lawyers would provide only the previously-awarded rates that support a higher rate, which is what happened here.

[24]*Beasley*, No. 4:19-CV-00471-JM; *Whitehead*, No. 4:20-cv-00234-BRW.

[25]*Id.*

[26]*Whitehead*, No. 4:20-cv-00234-BRW; *Oden v. Shane Smith*, No. 4:19-cv-00693-BRW.

[27]*Hill-Smith v. Silver Dollar Cabaret, Inc.*, No. 5:20-CV-5051, 2020 WL 4741917, at *4 (W.D. Ark. Aug. 14, 2020)– See also, *Smith v. OM Purshantam, LLC, et al.*, 2021 WL 1239468, at *3 ("Further, SLF's billing records indicate that, in May 2019, Mr. Sanford's hourly rate increased from $225.00 an hour to $325.00 an hour, a 44 percent increase. Around that same time, Mr. West's rate went from $150.00 an hour to $225.00 an hour, a 50 percent increase. Neither increase was explained. Had Ms. Smith's counsel not been retained on a contingency basis, they would have been required to notify their client of the rate increases and include the new rates in their billing.").

[28]*McDonald v. Armontrout*, 860 F.2d 1456, 1459 (8th Cir. 1988) ("Sindel's regular hourly billing rate provides a useful starting point for determining a reasonable fee. We have said that where an attorney requesting fees has well-defined billing rates, those rates can be used to help calculate a reasonable rate for a fee award."); *Dillard v. City of Greensboro*, 213 F.3d 1347, 1354 (11th Cir. 2000) ("What Still charges clients is powerful, and perhaps the best, evidence of his market rate.").

[29]*Dillard*, 213 F.3d at 1355.

SLF contends that "[b]ecause Mr. Sanford is reducing his hours, voluntarily, by 58.68% and Ms. Hamlet is reducing her hours, voluntarily, by 14.90%, this Court should not for a minute entertain reducing the hourly rates."[30]  This logic is flawed.  If you mark up the price of a $10,000 car to $15,000, but give they buyer a $2,500 discount, the car is still overpriced by $2,500.

In the reply, SLF asserts that "the hourly rates are consistent with actual fee awards made in this very district. See *Rodriguez v. Superior Real Estate Sols.*, No. 4:19-cv-405-DPM, 2021 U.S. Dist. LEXIS 81981, at *1 (E.D. Ark. Apr. 29, 2021)."[31]  In that case, Mr. Sanford was awarded an hourly rate of $383.  However, what SLF fails to mention is that the defendant did not object to the hourly rates.  Not mentioning this fact shows a lack of candor with the Court.  Also noticeably absent from the motion is any reference to all the other cases where his $300+ hourly rate was rejected and reduced.[32]

SLF also argues that its rates are appropriate because this case was taken on a contingency-fee basis.  Mr. Sanford's affidavit reads:

> To be clear, the "contingency" fee arrangement between Plaintiffs and Sanford Law Firm is not a contingency fee in the traditional sense whereby an attorney takes a

---

[30] Doc. No. 38.

[31] Doc. No. 50.

[32] *Vines*, 2020 WL 3062384 (reducing Mr. Sanford's hourly rate to $250); *Bryan v. Mississippi County, Arkansas*, No. 3:18-CV-00130-DPM, Doc. No. 68 (E.D. Ark. May 12, 2020) (reducing Mr. Sanford's hourly rate to $250); *Aubrey v. Zaman, LLC.*, No. 4:17-CV-00446-JLH (E.D. Ark. Nov. 29, 2018) (granting $275/hr rather than the requested $325/hr); *Wolfe v. Arafa*, No. 5:17-CV-00245-DPM (E.D. Ark. Aug. 8. 2019) (same); *Franklin v. Magnolia Flooring Mill, LLC*, No. 1:17-CV-01073, 2019 WL 2427952, at *4 (W.D. Ark. June 10, 2019) (holding that an hourly rate of $325 for Mr. Sanford was too high); *Perez v. Mian Enterprises, Inc*., No. 2:17-CV-02162, 2018 WL 10394810, at *2 (W.D. Ark. Oct. 26, 2018) (allowing $275/hr rather than the requested $325/hr).

portion of the plaintiff's recovery. Rather, Sanford Law Firm relies solely on the fee-shifting provisions of the FLSA and AMWA to recover their fees in this case.[33]

First, as has been pointed out before, this sworn statement is contradicted by SLF's standard contingency fee agreement, which says that if the lawyers are awarded lawyers' fees from a defendant, the fees will be "paid to the attorney in addition to the contingent fee . . . ."[34] However, the Court does not know whether this agreement is ever actually enforced. Second, while this is a factor, it has much less weight in an FLSA case than it does in a civil rights case. Both types of cases are intended to vindicate rights protected by Congress, but the length of litigation is much higher in civil rights cases, while the odds of success are much lower. Seasoned lawyers, such as in this case, should be able to quickly assess the merits of the claims and, typically, find resolution with the opposing counsel. The point is, although there is a risk in FLSA cases, it is usually much smaller than other fee-shifting cases.

SLF asserts that the " hourly rates charged by SLF are reasonable and below the national average for complex litigation."[35] As they should be, since FLSA is <u>not</u> complex litigation.

SLF also claims "The most natural comparators to the attorneys of Sanford Law Firm are practitioners at national firms that concentrate on employment law matters."[36] This claim is contrary to Eighth Circuit law.[37]

---

[33]Doc. No. 44-2.

[34]*Vines v. Welspun Pipes, Inc.*, No. 4:18-CV-00509-BRW, 2020 WL 3062384, at *3 (E.D. Ark. June 9, 2020).

[35]Doc. No. 38.

[36]Doc. No. 37-2.

[37]*Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1159 (8th Cir. 2014) ("A reasonable hourly rate is usually the ordinary rate for similar work in the community where the case has been litigated.").

Finally, there appears to be no shortage of lawyers willing to take these cases or evidence that they take away from the focus on other cases. In the past three years, 375 FLSA cases have been filed in the Eastern District of Arkansas. Notably, SLF has not argued that taking this case precluded other employment.

Based on a review of the submission and my knowledge of the local prevailing rate, I find that the reasonable hourly rates are:

| Attorney | Hourly Rate |
|---|---|
| Josh Sanford | $250 |
| Anna Stiritz | $250 |
| Vaness Kinney | $175 |
| Lydia Hamlet | $175 |
| Steve Rauls | $175 |
| Sean Short | $175 |
| Stacy Gibson | $150 |
| Rebecca Matlock | $150 |
| April Rheaume | $150 |
| Stacy Gibson | $150 |
| Courtney Lowery | $125 |

However, the "staff" work will not be billed to Defendants because their work involved only clerical activities.[38]

---

[38]This was a total of $90. *Gough v. Apfel*, 133 F. Supp. 2d 878, 881 (W.D. Va.2001) (citing *Missouri v. Jenkins*, 491 U.S. 274, 288 n. 10 (1989) ("Purely clerical activities, regardless of who performs them, are considered overhead and are not compensable as EAJA attorney fees."); *Semler v. Berryhill*, No. 16-CV-2445 (TNL), 2018 WL 1512056, at *1 (D. Minn. Mar. 27, 2018) "Clerical activities include tasks such as filing documents, preparing and serving summons, preparing and serving a civil cover sheet, mailing items to the court or other parties, downloading and emailing documents, and scanning documents as well as preparing an itemized invoice for legal services.").

## B.    Hours Expended

Now, I must consider the reasonableness of the hours expended.  After conducting a self-audit, SLF seeks reimbursement for 116.1 hours of work.  Although SLF removed some of the unnecessary oversight-billing, there is still plenty being claimed.  As I[39] and many other judges have pointed out before, SLF can engage in a "collaborative approach" involving constant oversight by a senior lawyer, but it cannot expect (nor should it ask) Defendants to pay for the practice, since it adds unnecessary hours to the bill.  Because no fee-paying client would compensate SLF for this practice, a defendant in a fee-shifting case should not be expected to either.  Yet, SLF continues to submit records replete with the practice, expecting the courts to do the line-item audit.  It seems impossible, but maybe all of the previous rulings have not set it out clearly enough.  I'll list a few:

Judge Brooks (WDAR):    "The Sanford Law Firm may choose to have Mr. Sanford personally oversee every aspect of run-of-the-mill motion practice requiring no court appearance, but it will not be permitted to pass the associated costs of doing so on to Defendants."[40]

"Although the law firm has admittedly adopted a collaborative practice wherein more experienced attorneys mentor the more junior attorneys, *see id.*, it does not necessarily follow that the time spent by the senior attorneys mentoring Mr. Hoyt should have reasonably been passed on to the client and claimed in this fee request, nor does it follow that nine separate

---

[39] *Vines v. Welspun Pipes, Inc.*, No. 4:18-CV-00509-BRW, 2020 WL 3062384, at *6 (E.D. Ark. June 9, 2020) ("SLF can disagree with whether overstaffing and micro-managing cases is a reasonable business practice, but defendants should not pay for the costly practice.  It appears to me that the only way to make the point that SLF will no longer be compensated for this inefficient practice is to impose a significant reduction in fees.").

[40] *Mya Hill-Smith v. Silver Dollar Cabaret, Inc., et al.*, No. 5:20-CV-5051; 2020 WL 4741917, at *3 (W.D. Ark. Aug. 14, 2020).

| | |
|---|---|
| | attorneys should have billed time to this rather uncomplicated wage-and-hour case."[41] |
| Judge Moody (EDAR) | "The time records are replete with instances of objectionable billing practices, including an excess of intraoffice communications, duplicate document reviews by multiple lawyers, billing at lawyers' rates for clerical work, etc. The Court will not hold Defendants responsible for these billing practices."[42] |
| Judge Marshall (EDAR) | "Involving two lawyers also ran the bill up some with needless coordination."[43] |
| | "[S]ix lawyers and a law clerk" is excessive and "too much time was spent on conferences, meetings, call, and emails between lawyers."[44] |
| Judge Chestney (WDTX) | "Plaintiff's counsel assigned five lawyers to work on this case at various times, and this led to inefficiencies and duplication of work. Plaintiff's counsel has been warned about this type of duplicative billing in the past."[45] |
| Judge Hickey (WDAR) | "[T]here are multiple instances of duplicative work performed and excessive intra-firm communication in the itemized list provided by Plaintiff's counsel."[46] |
| Judge Holmes (WDAR) | "These excessive intrafirm conferences and over staffed cases only serve the attorneys' invoices and take away |

---

[41]*Murdock v. McNair*, No. 5:17-CV-05225, 2018 WL 6314569, at *1 (W.D. Ark. Dec. 3, 2018)

[42]*Beasley v. Macuil's Tire & Serv. Ctr., LLC*, No. 4:19-CV-00471-JM, 2020 WL 3472556, at *2 (E.D. Ark. June 25, 2020).

[43]*Davis v. Klenk*, No. 3:12-CV-115-DPM, 2012 WL 5818158, at *2 (E.D. Ark. Nov. 15, 2012).

[44]*Bryan v. Mississippi County Arkansas*, No. 3:18-CV-00130-DPM, Doc. No. 68 (E.D. Ark. May 12, 2020) (

[45]*West v. Zedric's LLC*, No. SA-19-CV-00556-FB, 2019 WL 6522828, at *6 (W.D. Tex. Dec. 3, 2019)

[46]*Hays v. French Quarter Partners, LLC*, No. 6:15-CV-6065, 2016 WL 6518637, at *3 (W.D. Ark. Nov. 1, 2016)

from time that could be spent protecting the client's legal interests."[47]

"[T]ime spent on intra-firm communications was unnecessary and excessive" and much of the communication was "oversight" and "education" of a new lawyer."[48]

Judge Miller (EDAR)          "SLF's billing spreadsheet shows that eleven different lawyers, as well as five support staff members, worked on this fairly routine case . . . . SLF may consider it prudent to tightly manage its associates, but defendants will not be forced to bear the costs of that approach."[49]

Judge Baker (EDAR)          Noting that "Ms. Smith's counsel assigned 14 individuals to work on this case at various times and billed for 11 of them, including 7 lawyers . . . This may have led to inefficiencies and duplication of work. Ms. Smith's counsel has been repeatedly warned about this type of duplicative billing in the past." Ultimately Judge Baker reduced hours for "Case Management" and "In-House Conference" by 75%.[50]

Judge Bemporad (WDTX)          "In addition to duplication of work, having fifteen time keepers on a single case resulted in many charges for intraoffice conferences to discuss various assignments. Plaintiffs' counsel has been warned about this type of duplicative billing in the past."[51]

---

[47]*Cook v. Beemac Foods, LLC*, No. 2:18-CV-02155, 2019 WL 2418753, at n.2 (W.D. Ark. June 10, 2019)

[48] *Burchell v. Green Cab Co., Inc.*, No. 5:15-CV-05076, 2016 WL 894825, at *3 (W.D. Ark. Mar. 8, 2016)

[49]*Dean v. Bradford Estates*, No. 4:19-CV-00748-BSM, 2020 WL 8642227, *2 (Nov. 24, 2020).

[50]*Smith v. OM Purshantam, LLC, et al.*, 2021 WL 1239468, at *3.

[51]*Furlow v. Bullzeye Oilfield Servs.*, LLC, No. SA-15-CV-1156-DAE, 2019 WL 1313470, at *7 (W.D. Tex. Jan. 3, 2019), report and recommendation adopted, No. 5:15-CV-1156-DAE, 2019 WL 1313454 (W.D. Tex. Jan. 29, 2019).

There were thirteen time keepers in this case and ten of them were lawyers.[52] A review of the records reveals that associate Lydia Hamlet was the lead lawyer on this case. Defendants correctly note that "significant attorney time (40 hours, self-discounted to 18.9 hours) was expended on countless in house conferences/intra-firm communication and the preparation, drafting and/or review of 'IOM' (intra-office memos, presumably)."[53] Using Ms. Hamlet's asserted rated of $285 an hour,[54] this comes out to $5,386.50 for conferencing with co-counsel. This is far too much oversight for lawyer who has been practicing 11 years, and "has served as lead counsel on numerous bench trials . . . and has focused her practice on . . . employment law."[55] As has been pointed out time and again, the random involvement of all of the lawyers and the constant oversight by the senior attorney are inefficient, unnecessary, and unreasonable.

There are other issues to address:

**Unsuccessful Issues** – SLF seeks compensation ($474) for work on a Motion to Recuse, which was denied. It also seeks fees (over $3,600) for work on a Motion for Summary Judgment, which was granted for Defendants.[56] This is not the first time SLF has requested reimbursement for unsuccessful issues, so I do not understand why it continues to submit these frivolous requests.[57]

---

[52]However, Plaintiff voluntarily zeroed-out the work of three lawyers and one law clerk, for a total reduction of 5.5 hours.

[53]Doc. No. 49.

[54]She was the primary lawyer in the case. Even if you use the lowest rate submitted by SLF, the total is still $3,969. Notably, that lowest rate ($210) was billed only twice.

[55]Doc. No. 37-2.

[56]The order granting summary judgment was vacated only because Plaintiff accepted Defendants' offer of judgment after the summary judgment order was entered.

[57]I note that SLF's self-audit removed all the time for staff, an issue that has been discussed before. However, it did not remove the time for unsuccessful motions.

**Excessive Time** – SLF spent over 3.8 hours working on its witness estimates for trial. This is too much, considering there were only six potential witnesses.

**Clerical Work** – SLF seeks lawyer's rates for clerical work the lawyers performed. Lawyer should not be ordering transcripts, booking a conference room, filing motions, calendaring, etc. (or, at least they shouldn't be doing it at a lawyer's rate, when a secretary can do it).[58] This is not reasonable, as has been pointed out before.[59]

**Unclear Billing** – Excluding the entries removed during the self-audit, there are over sixty entries where the description of the work performed is entirely redacted. Typically it involves "client communication." However, I have no idea whether the communication was reasonable or necessary to advance the case. Since some were removed and others were not, I can only presume that some were unreasonable. Additionally, surely, not every contact with the client involved a privileged communication.

**Fees After Acceptance** – The Offer of Judgment unambiguously provides that Defendants would pay "plaintiff's counsel an award of reasonable attorneys' fees and costs <u>now accrued</u> within the meaning of Rule 68 . . . ."[60] Clearly, Defendants' offer excluded any fees and

---

[58]Doc. No. 37-1 at 2/11/21, 4/1/21, 5/4/21.

[59]*Vines*, 2020 WL 3062384, at *7; *Davis v. Klenk*, No. 3:12-CV-115-DPM, 2012 WL 5818158, at *2 (E.D. Ark. Nov. 15, 2012) ("[W]hile counsel may prefer to do his own electronic filing, it is not right to charge the other side a rate of $275.00 an hour for twelve minutes' work for that task."); *Beauford v. ActionLink, LLC*, No. 4:12CV00139 JLH, 2014 WL 183904, *4 (E.D. Ark. Jan. 15, 2014) ("Secretarial work on a case should not be billed to a client, nor to an opposing party in a fee-shifting case."); *Jones v. RK Enterprises of Blytheville, Inc.*, No. 3:13-CV-00252-BRW, 2016 WL 1091094, at *1 (E.D. Ark. Mar. 21, 2016), aff'd, 672 F. App'x 613 (8th Cir. 2016) (holding that it is "not acceptable for lawyers to do their own filing and then charge a lawyer's rate.").

[60]Doc. No. 25-1.

costs that would accrue after acceptance of the offer.[61]  If Plaintiff disagreed with this language, he could have included qualifying language in his acceptance.  He did not.  Accordingly, all fees accrued after the date of the offer must be excluded ($8,453.90).

**Unnecessary Billing** – SLF wants $57 for the primary lawyer on this case to twice discuss and unopposed motion for extension of time with the senior lawyer.[62]  Another $57 for discussions between three lawyers about ordering a transcript.[63]  There are more instances of this and duplicative billing, but there's no need to belabor the point.

**Other Consideration** – This case was not complex.  It did not present difficult legal questions and SLF did not assert that the case took it attention away from other cases.

**Limited Success** – When it comes to assessing reasonable fees, the Supreme Court has noted that "the most critical factor is the degree of success obtained."[64]  SLF asserts that it "was largely successful in this endeavor."[65]  Hardly.  In fact, the only reason Plaintiff received any money is because, unbeknownst to me, there was an outstanding offer of judgment when I granted summary judgment.  Defendants filed a Motion for Summary Judgment on March 22,

---

[61]*Guerrero v. Cummings*, 70 F.3d 1111, 1113 (9th Cir. 1995) ("Because the plain language of the settlement offers limits attorney's fees to those accrued prior to the date of the offers, the district court did not err in finding that the Guerreros' acceptance clearly and unambiguously waived attorney's fees incurred thereafter.").*Maker v. Barton*, No. 4:13 - CV - 2260, 2014 WL 1316936, at *3 (E.D. Mo. Apr. 2, 2014) (denying recovery of attorney's fees incurred between time of offer and time of acceptance where offer unambiguously covered only "reasonable attorney's fees, now accrued"); *Weible v. Jerold Kaplan L. Off.*, No. CV 09-198-PHX-NVW, 2010 WL 325738, at *1 (D. Ariz. Jan. 26, 2010) (Awarding fees for services expened up to November 5, 2009, when a November 4, 2009 offer of judgment included the "reasonable costs and reasonable attorney's fees now accrued . . . .".

[62]Doc. No. 37-1 at 3/24/21.

[63]*Id.* at 4/01/21.

[64]*Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).

[65]Doc. No. 50.

2021. The motion became ripe on April 22, 2021, and seven days later I granted summary judgment.[66] A few things are worth mentioning from that order:[67]

- "Plaintiff relie[d] solely on his own testimony" to support his claim for damages.

- "He concede[d] that when he reported overtime hours, he was paid for those overtime hours."

- "The weekly overtime hours Plaintiff claims [were] vague, inconsistent, and [were] not corroborated."

- "Plaintiff asserted that "he worked 7 to 35 hours overtime (over 40 hours) <u>every</u> week. However, his recorded time is not close to those amounts (47 to 75 hours)."

- "According to Defendants' records, Plaintiff's recorded time was less than 40 work hours in over half of the weeks (41 of 71 total weeks) he was employed with" Defendant.

- "Even if Plaintiff's assertions regarding the nature of his work duties are taken as true, nothing in his testimony indicates that this work put his total hours for any given week above the amount recorded on his time card, much less the 47 to 75 hours he claims."

- At one point, Plaintiff was "the maintenance supervisor, so he was responsible for recording and submitting his own time. When Plaintiff failed to follow the time reporting procedures, he prevented the Defendants from knowing its obligation to compensate him and removed any liability under the FLSA."

- "Plaintiff did not submit the off-the-clock overtime hours to Defendants."

- "Plaintiff did not make any written requests regarding any of his alleged off-the-clock work that he claims, even though Defendants clearly had a system to address these matters."

Clearly, Plaintiff was unable to support his claims. However, thirty-five minutes after I granted summary judgment, Plaintiff accepted the offer of judgment that Defendants extended

---

[66]Doc. Nos. 19, 21, 24.

[67]Doc. No. 24.

six days earlier.[68] So, except for a technicality (and a conflict between Rules 56 and 68), Plaintiff would have walked away with nothing.

Furthermore, his acceptance of $4,000 is far below the (unsupported) alleged damages of anywhere between $12,000 and $83,000.[69] Again, he could not be pinned down on damages, and as noted above, had no evidence to support his claims. Even in a settlement demand, Plaintiff guessed that his damages were between $12,351.38 and $83,867.60. However, he was willing to settle for $70,487.59.[70] Ultimately he received $4,000, after an adverse ruling on summary judgment. That is 5.6% of the of the demand. Although Plaintiff was, technically, the prevailing party, his "success" was paltry, at best. But for the offer of judgment being outstanding, Plaintiff (and his lawyers) would have walked away with nothing.

**Summary** – All of the mentioned billing issues (as well as some mentioned in Defendants' response that are not discussed in this Order, such as duplicative billing, block billing, etc.) result in a fee petition that is excessive and unreliable. "When a party submits a fee petition, it is not the 'opening bid in the quest for an award.'"[71] Numerous appellate courts have found that a court may deny a request in its entirety if the amount is "outrageously excessive."[72] The rationale is:

> If . . . the Court were required to award a reasonable fee when an outrageously unreasonable one has been asked for, claimants would be encouraged to make unreasonable demands, knowing that the only unfavorable consequence of such

---

[68]Doc. No. 25.

[69]Doc. No. 14-4.

[70]Doc. No. 52.

[71]*Clemens v. N.Y. Central Mutual Fire Ins. Co.*, 903 F.3d 396, 403 (3d Cir. 2018) (quoting *Fair Hous. Council of Greater Wash. v. Landow*, 999 F.2d 92, 97 (4th Cir. 1993)).

[72]*Id.* at 402-03 (3d Cir. 2018) (citing cases from 1st Cir; 4th Cir., 5th Cir., and 7th Cir.).

misconduct would be reduction of their fee to what they should have asked for in the first place. To discourage such greed a severe reaction is needful . . . .[73]

Additionally, the FLSA requires a court to award a "reasonable" fee. Black's Law dictionary defines reasonable as: "Fair, proper, just, moderate, suitable under the circumstances. Fit and appropriate to the end in view."[74] Based on my research, there are very few cases where summary judgment was granted and a plaintiff was able to avoid that result by accepting an outstanding summary judgment. Additionally, some courts even disallow such a result. Here, Plaintiff was unable to meet his burden, and was entitled to no recovery. However, because of timing, he was able to avoid the adverse result and received 5% ($4,000) of his demand. Now, SLF asks for over $30,000 in attorneys' fee. Such a result is not fair, proper, just or suitable under the circumstances. Furthermore, awarding anything more than a nominal fee is contrary to the purpose of the fee shifting statute. Lawyers should be compensated for legitimate FLSA cases, not those that cannot overcome summary judgment.

Originally, I considered reducing the issues mentioned above from the request of $30,681.70. This would result in $11,573.30. Reducing this amount based on Plaintiff's success of 5.6%, the result is a fee of $648.10, and that's at SLF's inflated hourly rates. However, even this is not fair, proper, or just under the circumstances. Judge Orlando Garcia, out of the Western District of Texas, sums up the issue this wayl:

> To fail to reduce the lodestar to reflect the lack of success in this case would encourage over-preparation and over-billing (including double-billing) for cases that are easily pursued and could be quickly settled, and would create a perverse

---

[73]*Brown v. Stackler*, 612 F.2d 1057, 1059 (7th Cir. 1980).

[74]Black's Law Dictionary (Deluxe) 1265 (6th ed. 1991).

incentive encouraging lawyers to pursue their own financial interests rather than those of their clients. The FLSA is not a vehicle for generating attorneys' fees.[75]

Again, but for a technicality, Plaintiff (and his lawyers) would have walked away with nothing in this meritless case. Because of timing, Plaintiff received $4,000. It is not fair, proper, or just to award SLF as well. Accordingly, SLF is entitled to $1, which, I note, is still more than it would have received had there not been an outstanding offer of judgment.

### D. Costs

SLF asserts that it incurred $1,241.00 in costs, which includes costs of a private process server, filing fee, and copies. However, the $825 cost for a private process server is not recoverable under 28 U.S.C. § 1920.[76] Accordingly, Plaintiff is entitled to costs of $416.

### E. Recusal Issue

Plaintiff filed objections earlier today that I will address now.[77] Yesterday, I[78] emailed the lawyers to find out what the settlement demands were, noting that "alleged damages were either $12k, $31k, $70k, or $83k. This is a wide gap."[79] In response, Plaintiff took exception to my request, and cited Rule 408, which I would note is a rule of evidence and inapplicable in this

---

[75]*Von Friewalde v. Boeing Aerospace Operations, Inc.*, No. SA-06-CA-236-OG, 2010 WL 11602576, at *8 (W.D. Tex. Mar. 30, 2010).

[76]*Crues v. KFC Corp.*, 768 F.2d 230, 234 (8th Cir. 1985) (holding that a party could not "recover $250 for use of a special process server, because 28 U.S.C. § 1920 (1982) contains no provision for such expenses.").

[77]Doc. No. 51.

[78]I dictated the email to my law clerk who forgot to include my name on the signature line.

[79]Doc. No. 52.

situation.[80]  Defendants pointed this out in their response, cited accurate law, and provided a response to my inquiry.

This morning, Plaintiff filed objections which (1) misconstrue the law regarding consideration of limited success; (2) assert that I "initiate(d) an off-the-record[81] inquiry into inadmissible information about the Parties negotiations is inappropriate, and supports Plaintiff's request that the Court recuse from deciding Plaintiff's motion for fees."[82]

Point 1 has already been addressed in this Order.

Point 2 is a continuation of SLF's repeated claims regarding my potential bias.  No such bias exists.  Disagreement with how I assess attorneys' fees does not support allegations of bias.  In fact, SLF's practice of filing motion to recuse supports my finding.  Glaringly, SLF does not file a motion to recuse in every case before me (just yesterday I presided over a jury trial where SLF represented the plaintiff).[83]  Instead, it files the motion to recuse only when there is a contested fees issue.  Obviously, the only issue it has relates to fees, not an actual bias.  Accordingly, the repeated requests to recuse are meritless.

---

[80]*Id.*

[81]Notably, there was no "off-the-record" inquiry.  Once both parties responded, I had the Clerk of the Court docket the emails.  Doc. Nos. 52-54.

[82]Doc. No. 51.

[83]This is not an invitation to file recusal motions in every case.  They will continue to be denied.

**CONCLUSION**

Based on the above reasons, Plaintiff's Motion to Approve Attorney Fees (Doc. No. 37) is GRANTED IN PART and DENIED IN PART. SLF is entitled to $1 in lawyers' fees and $416 in costs from Defendants.

IT IS SO ORDERED this 14th day of July, 2021.


Billy Roy Wilson _____
UNITED STATES DISTRICT JUDGE